A94A1178. KIRK & ASSOCIATES, INC. v. McCLELLAN et al.
A94A1179. BLACKWELL v. McCLELLAN et al.
(448 SE2d 764)

BEASLEY, Presiding Judge.

On April 4, 1989, a car driven by McClellan was struck head-on by a car driven by Blackwell and owned by her husband. McClellan and his wife sued driver Blackwell and later amended the complaint to include owner Blackwell, the City of Rome and, under the theory of respondeat superior, Kirk & Associates, Inc. ("Associates"). The City of Rome was awarded summary judgment. At trial, the jury found both driver Blackwell and Associates liable, but found in favor of owner Blackwell and the claims against him were dismissed. In separate cases, Associates and driver Blackwell appeal from the judgment in favor of the McClellans, whose cross-appeal has been withdrawn.

Blackwell was traveling the wrong way down a four-lane road. The opposing lanes of traffic were separated by railroad tracks. The collision occurred on a curved portion of the road in the rain, shortly after McClellan turned onto the road. Both drivers testified that the collision happened quickly after McClellan emerged from behind an obstructing vehicle or vehicles.

Associates operated a private detective business. About two months before the collision, Blackwell began working for Associates.

It was disputed whether she worked as an employee or as an independent contractor. On the morning of the collision, she received a telephone call from Associates asking her to conduct surveillance on an automobile traveling on a certain highway. Blackwell testified that she was on that job when the collision occurred, whereas the owner of Associates testified that, given the location of the collision, it was not possible for Blackwell to have been on the job.

### Case No. A94A1178

1. Associates contends that, even if Blackwell was pursuing an assignment at the time of collision, it is not liable under a respondeat superior theory because Blackwell was an independent contractor. It enumerates as error the court's holding that the driver was an employee rather than an independent contractor, as a matter of law. The court did not base its ruling upon the evidence of the working contractual relationship between Associates and driver Blackwell, but rather the legal conclusion that private detective agencies may employ only persons registered under the Georgia Private Detective & Security Agencies Act ("the Act"), which regulates both agencies and their employees. OCGA § 43-38-1 et seq. Thus the court removed from the jury the disputed factual issue and instructed it to decide the case upon an employer/employee relationship, thereby creating what may have been a fictional fact. The court reached this result by construing the Act so as to preclude the agency from claiming and proving that the driver was an independent contractor, thus removing a defense to the action. The question is whether achievement of the purpose of the Act compelled this result.

In determining whether the Act requires the conclusion reached by the trial court, " '[i]t is elementary that "(i)n all interpretations of statutes, the courts shall look diligently for the intention of the (legislature)." OCGA § 1-3-1.' [Cit.] The legislative intent is determined from a consideration of the entire statute." *Restina v. Crawford*, 205 Ga. App. 887, 888 (424 SE2d 79) (1992).

The stated purpose of the Act is to safeguard the citizens of this state by regulating private detective and security businesses, in the public interest. OCGA § 43-38-2. To accomplish this purpose, the Act is to be liberally construed. Id. It is apparent from a reading of the Act that the purpose is to be achieved by assuring that people who engage and work in these businesses are responsible, of good moral character, free of certain types of crime, qualified to handle firearms, and meet certain other similar criteria. Regulation is by a licensing system for operators of such businesses, OCGA § 43-38-6, and by a registration procedure for employees. OCGA § 43-38-7. Training appropriate to the business is required, see OCGA § 43-38-10.1, and

ongoing monitoring maintains the integrity of the industry. Sanctions are provided. OCGA §§ 43-38-11; 43-38-11.1; 43-38-16. The law regards violations of the Act to be "a menace and a nuisance and . . . dangerous to the public health, safety, and welfare." OCGA § 43-38-4 (d) (5). Thus the Act requires that certain standards be met in the businesses which provide detective and security services.

The Act seeks to protect those members of the public who come into contact with private detectives or security personnel from unscrupulous or criminally dangerous or unqualified persons. Its purpose, though broad, is not to assure that those working in the profession are qualified to drive, or to prevent negligence in the operation of motor vehicles. These public interests are served by other regulatory mechanisms and laws. The Act carries a mechanism and authority for the imposition of sanctions for its violation, and an express criminal penalty, but it does not impose tort liability on an employer in the absence of an employer/employee relationship. If the legislature meant to impose tort liability on a firm for the negligence of an unregistered independent contractor, even when the negligence involves only a collateral activity (driving, not investigating), it could have so provided. We decline to create this additional sanction.

Associates was duly licensed under the Act. However Blackwell, who was in fact either an employee or an independent contractor, was not registered, as required by OCGA § 43-38-7. Consequently, both Associates and Blackwell were in apparent violation of the Act and subject not only to sanction by the regulatory board but also to criminal prosecution under OCGA § 43-38-16.

The trial court's conclusion was incorrect in several specific respects. The court concluded that the Act forbids independent contractor relationships, but they are permitted, subject to the Act's licensing requirements. OCGA § 43-38-6. What is forbidden is for an employer to have an unregistered employee or to contract with an unlicensed party. The Act includes severe sanctions, but imposing tort liability under respondeat superior for negligent acts committed in the course of pursuing the business of regulated firms is not one of them. Holding the firm liable for negligent acts of an independent contractor would be a fundamental anomaly in tort law, and would not serve any purpose of the Act. Although holding a firm responsible for the act of an independent contractor would provide additional recourse for an injured party, the Act does not include any specific redress for a party injured as a direct result of negligent investigating or security activity, which is regulated by the Act. It would be a further anomaly to interpret the Act to create redress for parties injured by actions outside the Act's purpose when there is no redress for parties injured within the Act's purposes.

2. Associates moved for directed verdict on the question of

whether Blackwell was an independent contractor, contending she was one as a matter of law. It enumerates as error the denial of that motion. As stated in Division 1, the trial court erred in ruling that Blackwell was an employee as a matter of law. Directed verdict to Associates on the issue, however, was not warranted.

" 'The true test whether a person employed is a servant or an independent contractor is whether the employer, under the contract, whether oral or written, has the right to direct the time, the manner, the methods, and the means of the execution of the work, as contradistinguished from the right to insist upon the contractor producing results according to the contract, or whether the contractor in the performance of the work contracted for is free from any control by the employer of the time, manner, and method in the performance of the work. Where one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the employer has retained the right to control the manner, method and means of the performance of the contract, and that the employee is not an independent contractor. The test is not whether the employer did in fact control and direct the employee in the work, but it is whether the employer had that right under the employment contract.' [Cits.]" (Emphasis omitted.) *Hall v. Buck*, 206 Ga. App. 754, 758-759 (426 SE2d 586) (1992).

Evidence at trial included that Blackwell was directed by Associates in her handling of cases, submitted time sheets for her work, worked for Associates full-time and had no other job, could be removed from any job, and that Associates had sent a letter to clients announcing the addition of Blackwell to its staff. There was also evidence that, after Associates was added as a defendant to the suit, its president asked Blackwell to create certain documents indicating that she was an independent contractor, and to falsify the dates of those documents to indicate that they were created at the beginning of the employment relationship rather than after suit for fear that the relationship would be considered one of employer/employee, to Associates' detriment. Although there was evidence presented from which it could be concluded that she was an independent contractor, there was a conflict and Associates was not entitled to a directed verdict on the issue.

Associates also contends that the court erred in not charging the jury on the distinctions between employees and independent contractors. This contention is correct, as is inherent in our decision in Division 1.

3. Associates contends that the court erred in refusing to give its requested jury charge on traveling to work and the scope of employment. The principles of law properly presented by the requested

charge were adequately covered by the charge given. After Associates' exception to the rejection of the requested charge was made, the court stated that it had not given the requested charge because the charge included reference to a jury determination on whether Blackwell was, in fact, an employee of the firm and the court did not want to cloud the issue for the jury after the court's ruling on that matter on legal grounds. As we have determined that the court erred in that ruling, this enumeration is moot because it will not recur on retrial.

4. Finally, Associates contends the court should have granted a mistrial when the court made its legal determination that Blackwell must be considered an employee rather than an independent contractor because certain impeachment on that issue was inflammatory. The basis for the motion for mistrial was that impeachment of Associates' president, its primary witness, on the issue of employment status centered on alleged misrepresentations and fabrications which, after the employment issue was removed from the jury, only served to prejudice and inflame the jury. Blackwell also gave testimony about fabrication of documents concerning employment relationship. The court denied the motion, stating that the evidence was properly admitted to impeach credibility.

As discussed in Divisions 1 and 2, the issue of whether Associates was liable under a theory of respondeat superior required jury resolution. Since the issue was not presented to the jury, we cannot determine whether the impeachment may have affected the jury's deliberations on damages as well as liability. Therefore, on retrial, the issues will not be limited to liability, but must include consideration of damages.

### Case No. A94A1179

5. Blackwell complains that certain impeachment of her employment status was irrelevant given the court's ruling that she was an employee as a matter of law. As we have determined that ruling to be incorrect and the case must be retried, the enumeration is moot.

6. Blackwell also asserts it was error for the court to refuse to charge the jury on comparative negligence[1] and to give a charge on reckless driving.

As these enumerations rest upon specific testimony presented at trial and a retrial is required, they are moot. Whether such charges would be proper upon retrial depends on the evidence then presented and the requests then made.

*Judgments reversed. Andrews and Johnson, JJ., concur.*

---

[1] Contrary to McClellan's contention, comparative negligence was mentioned in the pre-trial order.

DECIDED SEPTEMBER 21, 1994.

*Thomas P. Bishop,* for Kirk & Associates, Inc.
*Rogers, Magruder, Sumner & Brinson, J. Clinton Sumner, Jr.,* for Blackwell.
*Paul T. Carroll III,* for McClellan et al.