A08A2316. HART et al. v. SHERGOLD et al.
(670 SE2d 895)

BLACKBURN, Presiding Judge.
In this civil action arising from a motor vehicle accident, Thomas and Gloria Shergold sued Norman Hart IV and Norman Hart III, alleging that Thomas Shergold suffered serious injuries caused by the younger Hart's negligence. A jury returned a verdict in the Shergolds' favor and awarded them over $2.1 million in compensatory damages. The Harts appeal the denial of their motion for judgment notwithstanding the verdict (j.n.o.v.) or, in the alternative,

---

for new trial, arguing that the jury's damages award was based on speculation and that the trial court erred in failing to give several requested jury charges. The Harts further contend that the damages award was so excessive as to be against the preponderance of the evidence. For the reasons set forth below, we affirm.

Construed in favor of the jury's verdict, see *Surles v. Cornell Corrections of California*,[1] the record shows that on the afternoon of June 28, 2006, 17-year-old Norman Hart IV was driving home from his summer job when he momentarily fell asleep at the wheel. As a result, Hart's automobile crossed over the centerline of the two-lane road into oncoming traffic and collided with Thomas Shergold's motorcycle. The force of the collision threw Shergold from his motorcycle into an embankment off the shoulder of the road. Shergold was flown by helicopter to the hospital where he was treated for multiple fractures and a serious injury to his left leg, which was so badly damaged that it ultimately had to be amputated just below the knee.

Shergold sued Norman Hart IV and his father, Norman Hart III, under the family purpose doctrine,[2] alleging that he suffered serious injuries as a result of the younger Hart's negligence. He later amended his complaint to add his wife as a plaintiff and to add a claim for her loss of consortium. He did not seek punitive damages. At trial, Shergold testified regarding the accident and the treatment of his injuries, including the amputation of his left leg and his consequent use of a prosthetic limb. He also proffered his medical bills, which totaled $653,165. In addition, the surgeon, who per-formed the amputation and also treated several of Shergold's other injuries, testified via deposition regarding the treatment of Shergold, which included six separate surgeries. The surgeon also testified as to the future medical expenses that the fifty-one-year-old Shergold would likely incur, including at least three surgeries and replacing parts for his prosthesis every three years for the rest of his life, which was estimated to be approximately twenty-five more years.

At the trial's conclusion, the jury rendered a verdict in favor of the Shergolds, awarding Shergold $2,108,165.33 in compensatory damages and awarding his wife $50,000 in loss of consortium damages. Subsequently, the trial court issued a judgment affirming the jury's verdict and award. Thereafter, the Harts filed a motion for j.n.o.v. or, in the alternative, for new trial, which the trial court denied after a hearing. This appeal followed.

---

[1] *Surles v. Cornell Corrections of California*, 290 Ga. App. 260, 261 (659 SE2d 683) (2008).

[2] OCGA § 51-2-2.

1. The Harts contend that the trial court erred in denying their motion for j.n.o.v., arguing that the jury's damages award was improperly based on speculation. Specifically, the Harts argue that the deposition testimony of Shergold's surgeon regarding the reasonableness of other medical providers' treatment and regarding future medical expenses constituted speculation. We disagree.

"A directed verdict or j.n.o.v. is required where there is no conflict in the evidence as to any material issues and the evidence (construed in favor of the nonmovant) demands a particular verdict." *Kellett v. Kumar*.[3] "Thus, the standard of appellate review of a trial court's denial of a motion for directed verdict or of a motion for j.n.o.v. is the any evidence test." (Punctuation omitted.) *Cole v. Webb*.[4]

The Harts first argue that the jury should not have been able to consider Shergold's surgeon's testimony regarding the cost and reasonableness of the treatments provided by other medical providers because such testimony constituted improper speculation. However, this argument ignores the fact that Shergold himself testified regarding the medical treatments he received from different providers and that he introduced his medical bills, which totaled $653,165, into evidence at trial. Under OCGA § 24-7-9 (a), plaintiffs and other specified lay witnesses in a personal injury action are "competent to identify bills for expenses incurred in treatment of the subject injury, and to prove that the charges were reasonable and necessary, where the bills were received from various specified health care providers (e.g., a hospital, pharmacy, licensed practicing physician)." *Zack's Properties v. Gafford*.[5] Additionally, subsection (b) of the statute makes it "unnecessary to produce an expert witness to prove such charges were reasonable and necessary." (Punctuation omitted.) *Eberhart v. Morris Brown College*.[6] Thus, the evidence of the cost of medical treatment that Shergold received from all of the various medical providers was not speculative and was properly considered by the jury. See *Zack's Properties*, supra, 241 Ga. App. at 45-46 (2).

The Harts further argue that the jury should not have been able to consider the surgeon's testimony regarding future medical expenses because it also constituted improper speculation. Again, we disagree. "An award of future medical expenses is authorized where it is supported by competent evidence to guide the jury in arriving at a reasonable value for such expenses." (Punctuation omitted.) *Bull*

---

[3] *Kellett v. Kumar*, 281 Ga. App. 120, 122 (1) (635 SE2d 310) (2006).
[4] *Cole v. Webb*, 267 Ga. App. 174, 176 (1) (598 SE2d 886) (2004).
[5] *Zack's Properties v. Gafford*, 241 Ga. App. 43, 45 (2) (526 SE2d 80) (1999).
[6] *Eberhart v. Morris Brown College*, 181 Ga. App. 516, 517 (1) (352 SE2d 832) (1987).

*Street Church of Christ v. Jensen*.[7] Here, Shergold's surgeon testified that Shergold would need at least three surgeries to treat the fractures in his hand and his leg and that such treatment would cost over $50,000. The surgeon further testified that the fifty-one-year-old Shergold would need to replace parts of his prosthetic leg, at a cost of $30,000, approximately every three years for the rest of his life, which the surgeon estimated would be approximately twenty-five more years. We find this testimony, which listed specific costs for the treatment that Shergold would need, was sufficient to authorize an award for future medical expenses. See *White v. Jensen*;[8] *Bull Street Church of Christ*, supra, 233 Ga. App. at 102-103 (3). Accordingly, the trial court did not err in denying the Harts' motion for j.n.o.v. based on this issue.

2. The Harts further challenge the denial of their motion for j.n.o.v. on the grounds that the trial court erred in failing to give several of their requested jury charges. Specifically, the Harts claim that the trial court failed to give their Requested Charge Nos. 2, 10, 12, 14, and 16. However, we find that the trial court instructed the jury sufficiently on the principles covered by the requested charges.

> It is axiomatic that a jury charge need not be given in the exact language requested if the charge as given clearly covers the circumstances of the case. All that is necessary, provided the requested charge accurately states the relevant principles of law, is that these principles be fairly given to the jury in the general charge. When it can be determined that the charge actually given conveys correctly the intent of the law and is so framed as to be applied with understanding to the fact situation, denial of a request for a specific charge is not reversible error.

(Punctuation omitted.) *Horton v. Hendrix*.[9]

The Harts' Requested Charge No. 2 instructed that a party's interest in the outcome of the case may be considered by the jury when assessing credibility. The trial court covered this principle in its charge on witness credibility, which included the instruction that in determining credibility, the jury could consider the witness's "interest or lack of interest in the result of the case."

Requested Charge No. 10 instructed that the defendant had no burden to prove that the negligence of another caused the plaintiff's injury. Additionally, Requested Charge No. 12 instructed that a

---

[7] *Bull Street Church of Christ v. Jensen*, 233 Ga. App. 96, 102 (3) (504 SE2d 1) (1998).

[8] *White v. Jensen*, 257 Ga. App. 560 (1) (571 SE2d 544) (2002).

[9] *Horton v. Hendrix*, 291 Ga. App. 416, 419-420 (1) (b) (662 SE2d 227) (2008).

plaintiff must prove damages even if a defendant's negligence has been established. The principles in both of these requested charges were covered by the trial court's instructions regarding burden of proof and the elements of a negligence claim.

Requested Charge No. 14 instructed that the speed limit on the road where the accident occurred was 35 mph. However, this requested jury charge was merely a statement of the Harts' contentions at trial and was an impermissible comment on the evidence that invaded the province of the jury. See *Wadkins v. Smallwood*.[10] Regardless, the trial court's instruction regarding speed restrictions covered the general principle encompassed by this requested charge.

Finally, Requested Charge No. 16 instructed that the plaintiff must prove that his injuries were permanent to recover for future pain and suffering. The trial court more accurately covered this principle by charging the jury in accordance with the pattern charge on future pain and suffering.[11] See *Imperial Foods Supply v. Purvis*.[12]

Given that the relevant legal principles in the Harts' requested charges were fairly covered in the trial court's instructions to the jury, the trial court did not err in failing to provide those charges. See *Fowler Properties v. Dowland*;[13] *Horton*, supra, 291 Ga. App. at 420 (1) (b). Accordingly, the trial court did not err in denying the Harts' motion for j.n.o.v. based on this issue.

3. The Harts also contend that the trial court erred in denying their motion for new trial or, in the alternative, to reduce the damages award, arguing that the award of $2,158,165.33 was so excessive as to be against the preponderance of the evidence. Specifically, the Harts first argue that the verdict is excessive because the jury should not have been able to consider the medical bills that were submitted by medical providers other than Shergold's surgeon. As we held in Division 1, this argument is without merit. The Harts further argue on general grounds that the verdict was against the preponderance of the evidence. Again, we disagree.

Under OCGA § 51-12-12 (a), "[t]he question of damages is ordinarily one for the jury; and the court should not interfere with jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case."

---

[10] *Wadkins v. Smallwood*, 243 Ga. App. 134, 139-140 (5) (a) (530 SE2d 498) (2000).

[11] See Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. I: Civil Cases, § 66.503 (5th ed. 2007).

[12] *Imperial Foods Supply v. Purvis*, 260 Ga. App. 614, 619-620 (6) (580 SE2d 342) (2003).

[13] *Fowler Properties v. Dowland*, 282 Ga. 76, 81 (5) (646 SE2d 197) (2007).

The amount of damages returned by a jury in a verdict for pain and suffering due to alleged negligence is governed by no other standard than the enlightened conscience of impartial jurors. And the defendant has a heavy burden under OCGA § 51-12-12 (a) to establish that such a damage award is excessive. In particular, appellate courts should be hesitant to second-guess verdicts where the damage award is based in any significant part on pain and suffering. Therefore, for this Court to overturn the jury's verdict, it must be so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake by the jurors. Moreover, because the trial court approved the verdict in denying [the Harts'] post-trial motion, a presumption of correctness arises that will not be disturbed absent compelling evidence.

(Punctuation omitted.) *AT Systems Southeast v. Carnes*.[14]

Here, Shergold testified as to his fears and pain immediately following the collision, the severity of his injuries, and the numerous surgeries that he underwent. As previously noted, Shergold proffered evidence that his medical bills totaled more than $600,000 and that his injuries would require additional surgeries. The fifty-one-year-old Shergold also proffered evidence that he would need to replace parts of his prosthetic leg, at a cost of $30,000, approximately every three years for the rest of his life. In addition, Shergold and his wife testified as to how the loss of his leg had dramatically changed Shergold's life in that he could no longer enjoy many of the physical activities in which he had previously engaged and was more dependent on his wife for assistance with everyday tasks. Shergold also testified that the residual part of his leg swells every day and that by the end of each day his prosthesis becomes painful to wear. Given this evidence, we cannot say that the jury's verdict and damages award is so flagrant as to shock the conscience. See *AT Systems Southeast*, supra, 272 Ga. App. at 673 (1); *Beam v. Kingsley*.[15] Accordingly, the trial court did not err in denying the Harts' motion for new trial or, in the alternative, to reduce the jury's damages award.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED DECEMBER 4, 2008 — 

*Mabry & McClelland, Richard H. Hill, Jr.*, for appellants.

---

[14] *AT Systems Southeast v. Carnes*, 272 Ga. App. 671 (1) (613 SE2d 150) (2005).
[15] *Beam v. Kingsley*, 255 Ga. App. 715, 716-717 (1) (566 SE2d 437) (2002).

*Link & Smith, Mark D. Link, Houston D. Smith III, Michael L. Werner*, for appellees.